FILED
JAN 22 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

South Lakes Dairy Farm,
a California general partnership,

Debtor.

Case No. 12-17458-B-11

DC No. RAC-4

**MEMORANDUM DECISION REGARDING BLAKELEY &
BLAKELEY LLP'S THIRD AND FINAL APPLICATION FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Ronald A. Clifford, Esq., appeared on behalf of the applicant Blakeley & Blakeley LLP.

Jacob L. Eaton, Esq., appeared on behalf of the debtor, South Lakes Dairy Farm.

    Before the court is the third and final application for compensation and reimbursement of expenses (the "Final Application") filed by the law firm Blakeley & Blakeley LLP ("Blakeley"), which represented the official committee of unsecured creditors in this chapter 11[1] case. The Final Application is opposed in part by the debtor, South Lake Dairy Farm (the "Debtor"). For the reasons set forth below, Blakeley's request for fees and reimbursement of expenses will be approved in full (less the reductions that Blakeley has voluntarily agreed to).

    This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C.

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23.

§ 330, and General Order No. 182 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

The background of this case has been fairly set forth in the Final Application (ECF No. 456), and will not be fully revisited here. However, for purposes of this memorandum, the relevant facts may be summarized as follows:

The Debtor, which operates a dairy, filed its chapter 11 petition on August 30, 2012. The United States Trustee appointed an official committee of unsecured creditors, consisting of seven creditors (the "Committee").[2] The court approved Blakeley's employment to represent the Committee on January 18, 2013.

The Committee has maintained an active presence throughout the case due in part to Blakeley's representation. In particular, the Committee objected to the Debtor's original plan, which had proposed to pay unsecured creditors $1.2 million, or 15% of their claims. In response to the objection, the Debtor elected to withdraw its plan. The Committee and the Debtor then renegotiated the terms of a plan that would return significantly more to the unsecured creditors; $2.6 million, or roughly 33% of their claims. With that plan now confirmed, Blakeley seeks compensation for representing the Committee.

Prior to filing the Final Application, Blakeley filed two interim applications for compensation and reimbursement of expenses. In the first interim application, Blakeley sought allowance of $23,874.50 in fees and $184.55 in expenses for work performed between September 21, 2012 and January 25, 2013 (the "First Application"). After receiving some informal comments from the Debtor, Blakeley voluntarily agreed to reduce the requested fees by $736. In the second interim application, Blakeley requested $17,514.50 in fees and $246.96 in expenses for work performed between January 26 and

---

[2] The creditors appointed to the Committee are Cal-By Products; Center for Race, Poverty and the Environment; Gillespie Ag Service; Pitigliano Farms; Seley & Company; Troost Hay Sales; and Western Milling, LLC.

2

June 16, 2013 (the "Second Application"). Again, Blakeley voluntarily agreed to reduce the requested fees, this time by $697.50.[3] For both interim applications, the court allowed the reduced fees and all of the expenses on an interim basis.[4] On account of its two interim fee applications, Blakeley has already been paid $41,123.01 which is $736 more than the interim allowance ($40,387.01).[5]

In the Final Application, Blakeley requests final approval of the two interim fee awards plus additional fees incurred through completion of the case. Altogether, Blakeley seeks final approval of fees totaling $86,606.23[6] ($85,642.50 in fees and $963.73 in expenses).[7] The Final Application drew a number of objections from the Debtor. At the hearing, the court heard oral argument and gave the parties the opportunity to settle the Debtor's objections or, if unsuccessful, gave Blakeley the opportunity to file a supplemental brief. The dispute remains unsettled. Blakeley's supplemental brief has been filed and the matter has been submitted.

**Discussion and Conclusions of Law.**

<u>Attorney Compensation under § 330, the Lodestar Method.</u> Section 330 of the Bankruptcy Code governs compensation to estate professionals, including those employed

---

[3] The $736 and $697.50 reductions addressed billing entries for clerical or secretarial tasks.

[4] For the First Application, the court had approved $23,323.05 in fees and expenses, and for the Second Application, the court had approved $17,063.96 in fees and expenses. Altogether, $40,387.01 in fees and expenses had been approved on an interim basis.

[5] In the Final Application, Blakeley acknowledged receiving only $17,690.45 from the Debtor, but the Debtor paid an additional $23,432.56 after Blakeley filed the Final Application. When calculating what it had to pay Blakeley on an interim basis, the Debtor likely used the amount requested by Blakeley in its First Application, rather than the amount ultimately allowed by the court.

[6] This figure takes into account Blakeley's $2,605 voluntary reduction from the originally requested amount.

[7] Blakeley filed a declaration from Lyle Ens, the chairperson of the Committee, stating that the Committee approves the fees requested by Blakeley in its Final Application.

by a committee under § 1103. Section 330 provides, in pertinent part, that the court may award "reasonable compensation for actual, necessary services rendered" by such professionals. § 330(a)(1). In the Ninth Circuit, the customary method for determining the award of reasonable attorney's fees is by the "lodestar" method. *Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 598 (9th Cir. 2006). Under this method, "'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Use of the "lodestar" method though is not mandatory. *See Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 961 (9th Cir. 1991) (concluding that bankruptcy court's use of alternative formula rather than lodestar method was not abuse of discretion).

Nevertheless, in deciding an applicant's "reasonable compensation," the bankruptcy court has the independent duty to "scrutinize the [fee] application in the interest of protecting the integrity of the bankruptcy system." *In re Pruitt*, 319 B.R. 636, 638 (Bankr. S.D. Cal. 2004) (citation omitted).

Prudent Billing Judgment. Whenever the court must determine the reasonableness of the hours expended by a fee applicant, a universal consideration in the court's analysis is whether the applicant exercised reasonable or prudent billing judgment when it incurred those fees. *See Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 109 (9th Cir. BAP 2000) ("Professionals always must exercise proper billing judgment."); *Lobel & Opera v. U.S. Tr. (In re Auto Parts Club, Inc.)*, 211 B.R. 29, 33 (9th Cir. BAP 1997) ("Professionals have an obligation to exercise billing judgment."); *see also Puget Sound Plywood*, 924 F.2d at 958–59 (noting that a bankruptcy professional had an "obligation to exercise billing judgment" and did not have "free reign to run up a tab" without considering several factors). On this "billing judgment" issue, the Supreme Court has commented,

> [A court] . . . should exclude from [the] initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel [who is requesting fees]

4

should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here.

*Hensley*, 461 U.S. at 434 (citations omitted) (internal quotation marks omitted) (Civil Rights Attorney's Fees Awards Act context). Thus, "[i]t does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis added).

"The [applicant] applying for fees bears the burden of proving the reasonableness of those fees." *Dalessio v. Pauchon (In re Dalessio)*, 74 B.R. 721, 724 (9th Cir. BAP 1987) (§ 506(b) context). It is not sufficient for the applicant to simply represent that all of the time claimed was usefully spent, and the court should not uncritically accept these representations. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987). Instead, the applicant must show that the time spent was reasonable necessary and that it made a good faith effort to exclude excessive, redundant, or unnecessary hours. *Id.* And unless the court is satisfied that the fee applicant exercised prudent billing judgment, the court is not required to accept the actual hours expended as being reasonable.

Detailed Fee Applications. The process of determining the reasonableness of fees necessarily begins with the fee application itself. Rule 2016 provides, "An entity seeking interim or final compensation for services . . . from the estate shall file an application setting forth a *detailed* statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a) (emphasis added). "These detailed applications establish the 'actual,' while an accompanying narrative explanation of the 'how' and 'why' establish the 'necessary.'" *In re Wildman*, 72 B.R 700, 707 (Bankr. N.D. Ill. 1987). "[D]etailed fee applications enable the bankruptcy court to fulfill its obligations to examine carefully the requested compensation in order to ensure that the claimed [fees and] expenses are justified." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 658 (9th Cir. 1985).

/ / /

Adjustments to Compensation Requested. On a motion by a party in interest or on its own sua sponte motion, the court may "award compensation that is less than the amount of compensation that is requested." § 330(a)(2). If reducing fees, the court must "provide a concise but clear explanation of its reason for the fee award," *Hensley*, 461 U.S. at 437, and must also "articulate with sufficient clarity the manner in which it makes its determination." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986), *amended*, 808 F.2d 1373 (9th Cir. 1987). However, this does not require the court to include detailed calculations in its explanations, but "something more than a bald, unsupported amount is necessary. *Id.* at 1211 n.3.

With these legal principles in mind, the court turns to Blakeley's Final Application and the objections raised by the Debtor.[8]

Voluntary Reductions. In response to a few of the Debtor's objections, Blakeley has again agreed to reduce the amount of its fee request. The court finds that these adjustments adequately address the applicable objections raised by the Debtor. First, the Debtor argues that some of Blakeley's billing entries represent tasks that are clerical or secretarial in nature and should therefore be disallowed. In response, Blakeley has agreed to reduce its fee request by $1,519. Second, the Debtor objects to some fees associated with work unrelated to this bankruptcy case. On account of these improprieties, Blakeley has agreed to reduce its fees by an additional $1,086. Lastly, the Debtor had reserved the right to object to any additional fees to be charged by Blakeley relating to defending its Final Application and other services rendered for the Committee after September 22, 2013, the end date of the application period. In its supplemental brief, Blakeley has agreed to waive those fees (excluding any fees incurred in preparing the supplemental brief itself), which it estimates to be $5,575.50.

---

[8] At the hearing, the court inquired about the billing entries of Blakeley's senior partner and whether his participation was reasonable and necessary in the case. Blakeley's supplemental brief addresses the court's concerns, and the court accepts Blakeley's response as adequate. Since the Debtor did not raise the same objection, the court sees no need to address the issue.

<u>Preparation of Fee Applications.</u>  The court next considers the Debtor's objection to Blakeley's fees for preparing the First and Second Applications.  Specifically, Blakeley incurred $4,701.50 (18.9 hours of attorney and paralegal time) preparing the First Application (representing roughly 20% of the fees requested in that application) and $4,175 (17.0 hours of attorney and paralegal time) preparing the Second Application (representing roughly 24% of the fees requested in that application).  The Debtor argues that these fees should be reduced because it believes that reasonable fees for preparing a fee application should never exceed 10% of the fees requested in that application.[9]

It is undisputed that an attorney is entitled to be compensated under § 330 for preparing a fee application.  *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 659 (9th Cir. 1985).  Nevertheless, the Bankruptcy Code provides that "[a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." § 330(a)(6).  In determining the reasonableness of such compensation, some courts have imposed strict caps or ceilings on how much an attorney can bill for preparing a fee application, usually in the form of a percentage of the total fees requested in the application.  *See, e.g., Rakitin v. Berliner Cohen (In re Dimas, LLC)*, No. NC-08-1073-DJuMk, 2009 WL 7809032, at *7 (9th Cir. BAP Feb. 25, 2009) (per curiam) (concluding that bankruptcy court from the Northern District of California abused its discretion when it approved, without explanation, fees for preparing fee application above the district's mandatory 5% limitation but noting that there are "circumstances that would justify an award of fees for preparing fee applications in excess of the five percent limitation").  However, this district has no equivalent across-the-board policy.  Thus, this court is not bound by any mandatory cap and declines to adopt such a strict limitation as requested by the Debtor.  Instead, the court considers the

---

[9] The Debtor has also pointed out that some of the billing entries related to the preparation of fee applications were for clerical or secretarial work, such as reviewing the judge's calendar and filing and serving the application.  However, these billing entries have already been addressed by Blakeley's $1,519 voluntary reduction.

totality of the circumstances and finds that the fees incurred in preparing the First and Second Applications are reasonable in this case.

First, when viewing in isolation Blakeley's fees for preparing each interim application, they do appear high. However, when considering the aggregated fees for preparing all three of the fee applications, they are more reasonable. Altogether, Blakeley expended $11,738 in preparing the three applications.[10] This represents about 13% of the total requested fees. Given the fact that Blakeley undoubtedly knew its fees would be contested by the Debtor, the time spent in preparing a record to support those fees appears to be more reasonable.

Additionally, given the sufficiency and completeness of its First and Second Applications, Blakeley did not draw formal objections from the Debtor, the United States Trustee, or any other party. The Debtor did make informal comments to Blakeley that resulted in Blakeley making two small voluntary reductions, but nevertheless, Blakeley's two interim fee applications did not result in further litigation (i.e., the filing of an objection to the application). If Blakeley had spent less time on preparing the interim applications, that could have had the effect of increasing the fees of both Blakeley and the Debtor's counsel.

Lastly, the court takes into account Blakeley's voluntary waiver of its fees in defending the Final Application (i.e., filing the reply brief and preparing oral argument), which it would have been entitled to receive under § 330. *See Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918, 928 (9th Cir. 2002) (holding that fees incurred in litigation a fee application are compensable if two requirements are met), *abrogated on other grounds by Lamie v. U.S. Tr.*, 540 U.S. 526 (2004). With this voluntary waiver, Blakeley has limited its fees relating to preparing and litigating fee applications to a reasonable level.

Travel Time. The Debtor also objects to a single billing entry in which one of

---

[10] Blakeley requested $2,861.50 for preparing the Final Application.

8

Blakeley's attorneys billed six hours to travel to and from a meeting with the Debtor and the Committee in Bakersfield to discuss the Debtor's plan on August 20, 2013.[11] The attorney billed the six hours at his usual rate of $295 an hour, but the Debtor argues that he should have billed this time at half of his usual rate.

Some courts require that an attorney to bill for travel time at a reduced rate, while others do not. *Compare In re Montgomery Drilling Co.*, 121 B.R. 32, 43 (Bankr. E.D. Cal. 1990) ("It is this Court's policy only to allow one-half of the hourly rate for travel time occurring between 8:00 a.m. and 5:00 p.m. if the travel time is specifically set out in the fee application."), *with In re Cano*, 122 B.R. 812, 814 (Bankr. N.D. Ga. 1991) ("Because bankruptcy attorneys are no less entitled to compensation for opportunity costs, travel time should be considered as part of the total hours spent serving the client and should be reimbursed at the full hourly rate."). However, this court does not need to adopt a specific policy given Blakeley's overall billing practice for travel in this case.

What is not included in Blakeley's billing entries says more than what has been included. As Blakeley has pointed out, it included only one billing entry for travel in its Final Application. Blakeley did not bill for any other travel even though other travel likely occurred. For most of the hearings in this case, Blakeley appeared telephonically, rather than flying or driving from Irvine to Fresno and back, which saved the estate a significant transportation expense, even at a reduced rate. And while a creditors' committee typically has a greater presence in a chapter 11 case than a lone creditor and would therefore likely prefer that its counsel appear in person at hearings, Blakeley was more than able to adequately represent the Committee without the need to be physically present at hearings. Due to Blakeley's efforts to reduce its need to travel, the six hours it billed at the usual hourly rate for traveling once to Bakersfield is not unreasonable under the circumstances.

---

[11] The actual billing entry is for 14 hours to "[t]ravel to and meet with debtor and the committee to discuss the plan," but the Debtor has assumed that eight of those hours were dedicated to the actual meetings.

<u>Out-of-State-Licensed Attorney.</u>  Next, the Debtor argues that one of Blakeley's attorneys, who is admitted to practice law in Delaware but not in California, should have billed for his work at an hourly rate of a law clerk.  In this case, the attorney billed a total of $22,361 in fees, representing 75.8 hours at $295 an hour.  The Debtor believes that the hourly rate should be brought down to $200 an hour.

However, the Debtor has not cited any authority that would require the court to limit the compensation of Blakeley's Delaware attorney, and the court cannot think of any circumstances in this case that would warrant such a limitation.  The Debtor cannot argue that the Delaware attorney was involved in the unauthorized practice of law because the firm has other attorneys who are licensed in California (and admitted in the Eastern District of California) and who fulfilled their duty of reviewing his work before it was filed.  *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823–25 (9th Cir. 2009) (awarding attorney's fees to out-of-state-licensed attorney where his "work was at all times filtered through [an in-state attorney], who was admitted to the [applicable jurisdiction] and subject to its discipline").  That attorney also was not required to seek admission pro hac vice since he never formally "appeared" before this court, either by appearing in court or by signing a motion, brief, or similar paper himself.  *See id.* at 825 ("An out of state attorney must still apply for *pro hac vice* admission if that attorney appears in court, signs pleadings, or is the exclusive contact in a case with the client or opposing counsel.").  Thus, no ethical issues arise when treating Blakeley's Delaware attorney as an attorney for purposes of awarding fees.

Further, to the best of the court's knowledge, the relevant inquiry into the "reasonable hourly rate" component of the lodestar does not involve consideration of an attorney's admission to a specific state or jurisdiction.  The court acknowledges that it is obviously important that an attorney be admitted to practice law.  However, for purposes of awarding fees, there should be less of a concern about where that attorney is licensed (as long as no ethical rules have been violated), particularly in bankruptcy cases, where the attorney's work typically involves matters of federal, rather than state, law.  To

determine what constitutes a reasonable hourly rate under the lodestar, the court turns to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This requires looking at the "rate prevailing in the community for similar work performed by attorneys of comparable *skill, experience, and reputation*." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (emphasis added); *see also Blum*, 465 U.S. at 898 ("[T]he special skill and experience of counsel should be reflected in the reasonableness of the hourly rates."). Thus, it is the attorney's skills and experience that are the more relevant in determining the proper hourly rate, rather than where he or she is admitted.

In this case, the Debtor has not raised any issues with Blakeley's Delaware attorney's qualifications, other than his lack of admission to the California Bar. The Debtor has also not objected to the hourly rate of Blakeley's most involved attorney in the case, who is also an associate at Blakeley and similarly billed at $295 an hour. In the absence of any circumstance that would warrant treating Blakeley's Delaware attorney as a law clerk, the court finds that the rate of $295 an hour is a reasonable hourly rate for this attorney.

Excessive Time Spent and Services Not Benefiting the Estate. The Debtor argues that four tasks billed by Blakeley were either excessive in the amount of time spent or were not beneficial to the estate. In other words, the Debtor believes that Blakeley did not exercise prudent billing judgment. These tasks include (1) billing 1.3 hours for $383.50 for reviewing certain secured creditors' stipulations relating to collateral valuations and analyzing the applicable proofs of claim; (2) billing 7 hours for $2,065 for determining the Debtor's ability to pay administrative expenses in full under its proposed plan; (3) billing 12.1 hours for $3,569.50 for reviewing proposed loan documents between Debtor and Wells Fargo Bank; and (4) billing 3.9 hours for $1,150.50 for researching and reviewing four recent dairy bankruptcy cases. However, the court is persuaded that the hours spent on these tasks were not excessive and that Blakeley's services did benefit the estate. Thus, the court finds that Blakeley exercised prudent

billing judgment and accepts the actual hours expended by Blakeley on these tasks as being reasonable.

As to the first task, the Debtor argues that reviewing two of its two-page stipulations with secured creditors regarding collateral valuations should have taken no more than 0.3 hours, rather than 1.3 hours actually billed. However, the Debtor oversimplifies what Blakeley actually did and why it did what it did. Not only did the firm review the stipulations, but it examined the proofs of claim of the relevant secured creditors (which were 9 and 13 pages) to confirm those creditors' security interests in the collateral. Given that Blakeley represents the committee of unsecured creditors and that secured creditors often have different interests than unsecured creditors, it was more than appropriate for Blakeley to closely analyze the stipulations and proofs of claim for these secured creditors. The time that Blakeley spent on this task was not unreasonable.

The Debtor also argues that the second disputed task, determining whether the Debtor had the ability to pay administrative expenses in full, should have been performed in 0.5 hours, rather than 7 hours. The Debtor believes that its administrative solvency was easily demonstrated in its plan, monthly operating reports, status conference statements, and other documents. Again, the Debtor understates the need for Blakeley's due diligence. No party adverse to the Debtor should be required to blindly accept whatever the Debtor has alleged in its papers. Further, the Debtor's disclosure statement (which was most recently filed in March 2013) did not paint a clear picture into the Debtor's administrative solvency by the time of confirmation (which occurred approximately six months later) since the disclosure statement estimated the bulk of the administrative expenses and included an outdated figure of the available funds to pay such expenses. Thus, it was not unreasonable or unnecessary for Blakeley to perform thorough due diligence, including researching the most recent operating reports and fee applications and drafting a memorandum of that research.

As to the third task at issue, the Debtor contends that Blakeley's fees for the 12.1 hours spent reviewing the loan documents held by Wells Fargo Bank, the Debtor's

primary secured creditor, should be reduced by at least half. The Debtor contends that such fees were unnecessary, but has not explained its position. Given that these loan documents were essentially part of the proposed plan (i.e., how the plan would treat Wells Fargo Bank's claim) and that unsecured creditors should have an interest in knowing how a senior secured creditor will be treated, it was appropriate for Blakeley to perform this task. One of the most important jobs a creditors committee has in a chapter 11 case is to confirm the rights of the secured creditors who claim priority ahead of the unsecureds. Due to the volume of the documents, consisting of more than 100 pages, the amount of time it took for Blakeley to review and analyze them was, again, not unreasonable.

Lastly, the Debtor has objected to Blakeley's fees for researching four other local dairy bankruptcies, arguing that this task did not benefit the estate (or the unsecured creditors). Blakeley's explanation though demonstrates why there was a benefit. The Debtor had informed unsecured creditors that their treatment under the plan would have been better than that of similarly situated creditors in like cases. By researching and reviewing the four bankruptcy cases, which involved dairies of similar size and geographical location as the Debtor, Blakeley was able to test the legitimacy of the Debtor's statements and negotiate with the Debtor more effectively.

As a final note, the court points out how the Debtor, throughout its objections, has attempted to downplay Blakeley's successful role in representing the Committee and unsecured creditors. Because of Blakeley's due diligence and efforts throughout this case, the unsecured creditors fared significantly better that they would have in the plan originally proposed by the Debtor. As part of the § 330 inquiry, the court not only "examine[s] the circumstances and the manner in which services are performed [but also] *the results achieved* in order to arrive at a determination of a reasonable fee allowance." *Mednet*, 251 B.R. at 108 (emphasis added). And in this case, the court notes how the Committee's objection to the Debtor's plan resulted in the Debtor modifying its plan to increase payments to unsecured creditors from $1.2 million to $2.6 million. Due to Blakeley's services, unsecured creditors will be able to recover roughly 33% of their

claims, rather than the originally proposed 15%.

**Conclusion.**

Based on the foregoing, the court will allow Blakeley's compensation in the amount of $85,642.50 and reimbursement of expenses in the amount of $963.73, which together equals $86,606.23. Blakeley has voluntarily reduced its initial request for compensation ($88,247.50) by $2,605. Additionally, as offered by Blakeley, fees for defending the Final Application and for other services rendered for the Committee after September 22, 2013, have been waived. Taking into account the $41,123.01 already paid by the Debtor, it appears that Blakeley is entitled to an administrative claim in the amount of $45,483.22.

Dated: January 22, 2014

W. Richard Lee
United States Bankruptcy Judge

## Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Ronald A. Clifford, Esq.
Attorney at Law
2 Park Plaza, Suite 400
Irvine, CA 92614

Don J. Pool, Esq.
Attorney at Law
7522 N. Colonial Avenue, Suite 100
Fresno, CA 93711

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721